**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **DONALD TAYLOR and** | * | |
| **GSI, Inc.;** | * | |
| **Plaintiffs,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO.:** |
| | * | **1:17-cv-00456-GBL-MSN** |
| **ALASKA NATIVE GENERAL SERVICES** | * | |
| **LLC; COPPER RIVER INFORMATION** | * | |
| **TECHNOLOGY, LLC; SOTEC, LLC** | * | |
| **d/b/a SOTEC GOVERNMENT** | * | |
| **SOLUTIONS, LLC; H. BENJAMIN** | * | **JURY DEMAND** |
| **BRUCKER; EDMUND I. MANGINI;** | | |
| **and SONNIE L. JACKSON** | * | |
| | * | |
| **Defendants.** | * | |

---

### FIRST AMENDED COMPLAINT

---

COMES NOW Plaintiffs, Donald Taylor and GSI, Inc., by and through their attorneys and pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) and hereby files their First Amended Complaint against Defendants Alaska Native General Services, LLC, Copper River Information Technology, LLC, SOTEC, LLC d/b/a SOTEC Government Solutions, LLC, H. Benjamin Brucker, Edmund I. Mangini III, and Sonnie L. Jackson.  In support of this Amended Complaint, Plaintiffs state and allege as follows:

### NATURE OF THE CASE

1.    This is an action for damages asserting state law claims of fraudulent misrepresentation and inducement, fraudulent suppression and concealment, breach of fiduciary duty, breach of loyalty, breach of trust and confidence, misappropriation of corporate opportunities, fraudulent misrepresentation, fraudulent inducement, fraudulent suppression and/or

concealment, conversion, constructive trust, violations of the Georgia Deceptive Trade Practices Act, and unjust enrichment.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is also invoked pursuant to 28 U.S.C. §1332(a).

3.      Because none of the Defendants can invoke sovereign immunity, this Court has subject matter jurisdiction over the action.  Several courts have held that the Alaska Native villages and communities—let alone corporations formed by these communities—are not accorded sovereign tribal status.[1]  In any event, Defendants have waived sovereign immunity to the extent they could claim it applied.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) since Defendants do business in this district and a substantial part of the conduct giving rise to the claims occurred in this district.

## PARTIES

5.      Plaintiff, Donald Taylor, (hereinafter "Taylor" or "Plaintiff") is an individual over the age of 19 and a resident citizen of Atlanta, Georgia.

6.      Plaintiff GSI, Inc., (hereinafter "GSI" or "Plaintiff") is a Wyoming corporation with its principal office and place of business located in Atlanta, Georgia (Cobb County).  At its inception, GSI was formed as a Wyoming limited liability corporation, with its principal place of business in Atlanta, Georgia, but was converted to a Wyoming corporation on November 21, 2012.

7.      Defendant Alaska Native General Services, LLC, (hereinafter "ANGS" or

---

[1] *See, e.g.*, *Native Village of Stevens v. Alaska Management & Planning*, 757 P.2d 32, 41 (Alaska 1988) ("In a series of enactments following the Treaty of Cession and extending into the first third of [the twentieth] century, Congress has demonstrated its intent that Alaska Native communities not be accorded sovereign tribal status."); *Metlakatla Indian Community, Annette Island Reserve v. Egan*, 362 P.2d 901, 917 (Alaska 1961) ("The United States has never entered into any treaty or similar type agreement with any group of Indians in Alaska."), *rev'd in part*, 369 U.S. 45 (1962)

"Defendant") is an Alaskan limited liability corporation with its principal office and place of business located in Cordova, Alaska.

8.    Defendant Copper River Information Technology, LLC (hereinafter "Copper River" or "Defendant") is an Alaskan limited liability corporation with its principal office and place of business located in Chantilly, Virginia.  Defendant does business in the State of Virginia, including this district.  Copper River's sole owner and member is ANGS.

9.    Defendant SOTEC, LLC (hereinafter "SOTEC" or "Defendant") is a Virginia limited liability corporation with its principal office located in Chantilly, Virginia.  Defendant does business in the State of Virginia, including this district.  SOTEC, LLC has previously done business as SOTEC Government Solutions, LLC.  Upon information and belief, SOTEC has been acquired by and is now owned and/or managed by either ANGS or Copper River.

10.    Defendant H. Benjamin Brucker ("Ben Brucker," "Brucker," or "Defendant") is an individual over the age of 19 years and resides in Virginia.

11.    Defendant Edmund I. Mangini III ("Ed Mangini," "Mangini," or "Defendant") is an individual over the age of 19 years and resides in New Hampshire.

12.    Defendant Sonnie L. Jackson ("Sonnie Jackson," "Jackson," or "Defendant") is an individual over the age of 19 years and resides in Virginia.

## STATEMENT OF THE FACTS

### Defendants' Background

13.    Defendant Alaska Native General Services (hereinafter "ANGS") is a business entity through which the Native Village of Eyak, a federally recognized tribe, does business.

14.    Defendant ANGS is organized under the laws of Alaska and registered with the Alaska Secretary of State.

15. Defendant ANGS is a holding company and a majority of its subsidiaries are SBA Section 8(a) participant companies.

16. As will be discussed *infra*, ANGS secured financing in an approximate amount of $3 million from Xenith Bank to invest in GSI. As part of the loan agreement, upon information and belief, ANGS waived any claims it might have to sovereign immunity.

17. Defendant Copper River is a business entity through which the Native Village of Eyak, a federally recognized tribe, does business.

18. Defendant Copper River is registered with both the Alaska and Virginia Secretaries of State.

19. Defendant Copper River has Federal Government contracts under the Small Business Administration's §8 (a) Business Development Program with various agencies and at various job sites across the country. The § 8(a) Business Development program established pursuant to 15 U.S.C. §637(a) provides federal contracts to business with minority owned businesses, including but not limited to Native American Tribes.

20. Pursuant to §8 (a) regulations, 13 C.F.R. § 124.109 (c)(1), Copper River's articles of organization contain an express sovereign immunity waiver and/or a "sue or be sued" clause which designates United States Federal Courts as courts of competent jurisdiction for all matters relating to SBA programs including, but not limited to, 8(a) program participation, loans and contract performance.

21. Despite being Alaska Native corporations, neither ANGS or Copper River is immune from suit because neither possesses key attributes of an independent and self-governing tribe and are not themselves sovereign entities.

22. Neither ANGS or Copper River are listed on the Bureau of Indian Affair's list of

federally recognized tribes that possess certain immunities and privileges.  *See* Notice of Federally Acknowledged Tribes, 81 F.R. 5019, 5019-25 (Jan. 1, 2016).

23.     Defendant SOTEC is a staffing company who provides temporary, temporary-to-hire, and permanent placement temporary support personnel.

24.     Defendant SOTEC is organized under the laws of Virginia and is registered with the Virginia Secretary of State.

25.     Upon information and belief, SOTEC has been acquired by and is now owned and/or managed by either ANGS or Copper River.  On April 1, 2013, both SOTEC's registered agent and principal office of record with the Virginia Secretary of State were changed.  SOTEC's office was changed from Herndon, Virginia to 4501 Singer Court, Chantilly, Virginia, 20151—***the same office of record for Copper River***.  Additionally, the registered agent was changed to Sonnie Jackson, whose LinkedIn page shows he was employed as a Copper River Business Operations Manager while concurrently serving as CEO of SOTEC.  Finally, SOTEC is listed by business websites as a "Native American Owned Business."

**Defendants' Initial Misrepresentations**

26.     On or about October 22, 2012, in Atlanta, Georgia, Plaintiff GSI by and through its president and CEO, Donald Taylor, entered into a "Turf Agreement" with AT&T Mobility, LLC. Under the terms of the Turf Agreement, GSI agreed to provide 4G LTE upgrade and tower maintenance services for AT&T Mobility, LLC for a period of five years.

27.     In exchange for the foregoing services, under the Turf Agreement, GSI would receive approximately $40 million in revenue from AT&T Mobility, LLC over the five-year term of the agreement (e.g., hereinafter the "AT&T Services Contract").

28.     In or about November 2012, Defendant Ben Brucker was employed by Defendant

Copper River as its executive vice-president.[2]  At that time, upon information and belief, a mutual acquaintance of both Brucker and Taylor, informed Brucker about GSI's AT&T Services Contract and suggested to Brucker that GSI would be a good investment opportunity for Copper River.

29.     Consequently, in or about November 2012, Brucker contacted Taylor in Atlanta, Georgia and began discussions with Taylor regarding potential investment in GSI as well as discussions concerning subcontractor opportunities for Copper River with respect to GSI's AT&T Services Contract.

30.     In or about December 2012, Ben Brucker and Steve Giani (former president and CEO of Copper River) met with the Board of ANGS to discuss the potential for ANGS investing in GSI.

31.     In or about December 2012, Ben Brucker, Steve Giani and ANGS agreed to invest $3 million in GSI; in exchange, (i) ANGS would obtain twenty percent ownership interest in GSI; (ii) GSI would give ANGS the right to pick two individuals to serve on GSI's board; and (iv) GSI would agree to hire Copper River as a subcontractor for the AT&T Services Contract.

32.     In or about December 2012, in Atlanta, Georgia, Taylor and GSI accepted the foregoing offer by ANGS.

33.     In or about January 2013, in a document titled "Preferred Stock Agreement" ANGS, by and through its president and CEO Jack Hopkins, represented to GSI that ANGS would buy 268 shares of GSI stock at the purchase price of $11,194.03 per share—a total of $3 million.

34.     After Taylor accepted ANGS's offer, ANGS began the process of obtaining a $3 million loan to satisfy its agreement with Taylor.

---

[2] Since that time, Brucker was promoted to President of Copper River and later became President of ANGS, as well.

35.     In or about January 2013, while ANGS was in the process of obtaining the aforementioned $3 million loan, ANGS and Copper River, by and through Jack Hopkins, Giani and Brucker, represented to Taylor and GSI that Copper River would loan GSI $1.5 million so that GSI could continue to meet payroll, continue operating, have working capital, and purchase equipment necessary for GSI to meet its obligations under the AT&T Services Contract.  Further, at this same time, ANGS and Copper River represented to Taylor and GSI, that GSI could pay back the $1.5 million to Copper River once ANGS provided GSI the $3 million consideration under the stock purchase agreement.

36.     Based on the foregoing representations by ANGS and Copper River, in January 2013, GSI borrowed $1.5 million from Copper River.

37.     Taylor and GSI reasonably relied on ANGS's and Copper River's representations.

38.     The representations made by ANGS and Copper River were false and ANGS and Copper River knew that these representations were false at the time they were made.

39.     Moreover, in January 2013, GSI also agreed to allow Brucker and Giani, respectively, to purchase stock in GSI.  Brucker obtained 6% interest in GSI in exchange for a $140,000 purchase price and Giani obtained 4% interest in exchange for a $100,000 purchase price.

**Defendants' Fraudulent Conduct**

40.     In or about April 2013, Brucker replaced Giani as president and CEO of Copper River.

41.     Also, in or about April 2013, ANGS secured the financing of a $3 million loan from Xenith Bank, and also obtained a guarantee from the Bureau of Indian Affairs ("B.I.A") wherein the B.I.A. guaranteed ninety percent of the $3 million loan.

42.     In or about April 2013, after receiving the $3 million loan and the B.I.A. guarantee of said loan, ANGS, Copper River, and Brucker represented to Taylor and GSI, in Atlanta, Georgia, that ANGS would use the $3 million to purchase 268 shares of GSI stock at the purchase price of $11,194.03 per share if, in addition to receiving twenty percent ownership interest in GSI, selection of two individuals to serve on GSI's board, and GSI hiring Copper River as subcontractor for the AT&T Services Contract, GSI also agreed to hire Brucker as the President of GSI and Ed Mangini (the CFO of Copper River) as the CFO of GSI.

43.     Specifically, in or about April 2013, ANGS, Copper River, and Brucker told Taylor and GSI that Brucker had the expertise, knowledge, leadership, and experience to serve as both the president and CEO of both GSI and Copper River.

44.     Likewise, in or about April 2013 ANGS, Copper River, and Mangini represented to Taylor and GSI that Mangini had the expertise, knowledge, leadership, and experience to serve as both the president and CFO of both GSI and Copper River.

45.     Further, ANGS, Copper River, Brucker and Mangini represented to Taylor and GSI that hiring Brucker and Mangini would benefit GSI because doing so would free Taylor up to manage the day-to-day operations of GSI's AT&T Services Contract. In the meantime, according to the representations by said Defendants, Brucker and Mangini would use their respective expertise, knowledge, leadership and experience to properly manage the business operations of GSI.

46.     Based on ANGS, Copper River, Brucker and Mangini's representations, Taylor and GSI reasonably relied upon said representations and reluctantly hired Brucker and Mangini as the president/CEO and CFO, respectively, of GSI.

47.     Nonetheless, after Taylor and GSI hired Brucker in or about April 2013, ANGS

failed to pay GSI the $3 million for the 268 shares of GSI stock it agreed to purchase.

48.     The representations made by ANGS, Copper River, Brucker and Mangini were false and ANGS, Copper River, Brucker and Mangini knew that these representations were false at the time they were made.

49.     Unbeknownst to Taylor and GSI at the time, rather than purchase GSI stock as it represented, ANGS deposited the $3 million it promised to GSI in Copper River's bank account.

50.     Though ANGS never paid the $3 million stock purchase price to GSI, GSI tendered the 268 shares of GSI preferred stock to ANGS.

51.     After Brucker and Mangini were hired as President and CFO of GSI, respectively, their conduct fell well below that required of corporate executives.

52.     After becoming President of GSI, Brucker appointed Defendant Sonnie Jackson to shadow Taylor and learn the business operations of GSI.

53.     In or about April, 2013, Defendants ANGS, Copper River, and Brucker attempted to get further control of GSI by requiring Taylor to agree to add Brucker as a fifth board member of GSI.  Plaintiff Taylor, being reasonably concerned about handing over control of his company, refused to be pressured and did not agree to add Brucker to GSI's board.

54.     In or about May, 2013, ANGS and Brucker approached Taylor and Ron Sullivan regarding buying out Taylor's and Sullivan's interests in GSI.  Though negotiations occurred and, upon information and belief, a business valuation was completed, demonstrating the value of GSI as substantial, the buy-out never occurred.

55.     On or about May 8, 2013, Mangini convinced Taylor to make Mangini the sole signatory on GSI's banking account with Wells Fargo Bank.

56.     On or about July 2, 2014, Defendants Copper River and Mangini, without any

permission or authority to do so from GSI's board of directors, closed GSI's banking account with Wells Fargo and misappropriated funds in said account belonging to GSI and Taylor.

**Misappropriation of the AT&T Services Contract**

57.     In December of 2013, Copper River, Brucker, Mangini, and Jackson fraudulently represented to AT&T that Brucker had the authority to reassign GSI's AT&T Services Contract. Upon information and belief, Copper River, Brucker, Mangini, and Jackson did so by representing that Taylor and GSI's personnel would remain working on the AT&T Services Contract and that Taylor and GSI's knowledge, expertise and experience would continue to be utilized with respect to the services provided pursuant to the AT&T Services Contract.

58.     In or about December 2013, unbeknownst to Plaintiffs at that time, Mangini, Brucker, and Jackson, with the help of directors, officers, and employees of Copper River and SOTEC, falsely and fraudulently convinced AT&T Mobility, LLC to pay SOTEC under the AT&T Services Contract, instead of GSI.

59.     Upon information and belief, ANGS and/or Copper River controlled SOTEC at the time of assignment.

60.     In fact, on December 13, 2013, Brucker executed Amendment 2 to the AT&T Services Agreement whereby AT&T consented to GSI's assigning of the AT&T Services Contract to Defendant SOTEC, which was doing business as SOTEC Government Solutions, LLC, at the time.

61.     Brucker signed the Amendment as President of GSI, Inc.

62.     Jackson signed the Amendment as CEO of SOTEC Government Solutions, LLC.

63.     Brucker, however, had no authority from GSI's board of directors to reassign GSI's largest asset.  Neither Taylor nor Ron Sullivan received a notice for a board meeting, thus no

quorum could have been present.  Nor did Taylor or Sullivan sign a resolution to constitute action by the Board.

64.     According to GSI's by laws, the President may only sign contracts on behalf of the corporation "as authorized by the Board of Directors."

65.     Jackson, who had been appointed to shadow Taylor and learn the operations of GSI, knew that he was head of the company in that he served on the board and was involved in several important decisions made on behalf of GSI.  He therefore knew that Taylor should have been involved in the decision to assign the AT&T Services Contract.

66.     SOTEC's business operations include only providing temporary, temporary-to-hire, and permanent placement temporary support personnel.  SOTEC is not a technology business and does not have the capability to provide 4G LTE upgrade and tower maintenance services under the AT&T Services Contract.

67.     Consequently, in or about August 2013, Mangini, Brucker, and Jackson, with the help of the directors, officers and employees of Copper River and SOTEC, misappropriated GSI's business opportunity under the AT&T Services Contract.

68.     In or about January 2015, in or about Atlanta, Georgia, Plaintiff Taylor received an email notice from Citibank regarding unclaimed funds pertaining to Plaintiff GSI's bank account with Citibank.

69.     In or about January 2015, in or about Atlanta, Georgia, Plaintiff Taylor contacted Citibank regarding the aforementioned unclaimed funds that belonged to Plaintiff GSI and during his communications with Citibank Plaintiff Taylor was told by the bank that the unclaimed funds had been claimed and that the firm (GSI) had been sold.

70.     In or about May 2016, Plaintiff Taylor discovered that Defendant Copper River was

representing to the public that it had a direct business relationship with AT&T and Sprint in regards to providing cell tower upgrades and cell tower construction to these aforementioned telecommunication companies.

71.     Defendants Copper River, SOTEC, Brucker, Mangini, and Jackson had a duty to disclose to GSI and Taylor that said Defendants unlawfully assigned GSI's AT&T Services Contract to SOTEC.

72.     Copper River, SOTEC, Brucker, Mangini, and Jacksons actively suppressed and concealed from GSI and Taylor that said Defendants unlawfully assigned GSI's AT&T Services Contract to SOTEC.

73.     Defendants ANGS, Copper River, SOTEC, Brucker, Mangini, and Jackson entered into a pattern and practice of fraudulent and wrongful conduct which included the failure to disclose critical facts about the transactions in question and the fraud practiced on Plaintiffs.

74.     Yet, in January of 2014—*after* the AT&T Services contract had been assigned to SOTEC, Defendants Brucker and ANGS represented to Plaintiff Taylor through email communication that Brucker was "managing the company as well as he can" and never mentioned assignment of the AT&T Services Contract.

75.     The conduct by Defendants was intentional, gross, wanton, malicious, and/or oppressive.

76.     Defendants' fraudulent and malicious conduct is further illustrated by the fact that the $3 million in financing ANGS received to invest in GSI was secured by the AT&T Services Contract. The B.I.A. guaranteed 90% of this loan, with the secured asset being the AT&T Services Contract. When the AT&T Services Contract was unlawfully assigned, ANGS no longer had any claim to the secured asset upon which its loan from Xenith bank, guaranteed by the B.I.A., was premised.

77. The Plaintiff discovered the wrongdoings of the Defendants within four years of filing this lawsuit.

## COUNT I
## <u>BREACH FIDUCIARY DUTY, BREACH OF DUTY OF LOYALTY, and BREACH OF TRUST AND CONFIDENCE</u>

78. Plaintiffs reallege and reaffirm all allegations and averments contained in all of the above and foregoing paragraphs of this Complaint.

79. Brucker has knowingly, intentionally, recklessly, negligently, wrongfully, fraudulently and/or maliciously breached his fiduciary duty, duty of loyalty, and position of trust and confidence to and with GSI.

80. Mangini has knowingly, intentionally, recklessly, negligently, wrongfully, fraudulently and/or maliciously breached his fiduciary duty, duty of loyalty, and position of trust and confidence to and with GSI.

81. Brucker, Mangini, and Copper River have knowingly, intentionally, recklessly, negligently, wrongfully, fraudulently, and/or maliciously conspired and aided and abetted each other in regard to said breach of fiduciary duty, duty of loyalty, and position of trust and confidence to and with GSI.

82. As a direct and proximate result of Defendants' conduct, GSI and Taylor have been damaged and injured in a total amount that has not yet been determined. However, GSI and Taylor estimate that Defendants' conduct in assigning the AT&T Services Contract to SOTEC has cost Plaintiffs in excess of $40,000,000.

83. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to presently suffer and sustain certain immediate and possibly irreparable damage, injury and harm. Unless Defendants are restrained and enjoined, GSI will continue to suffer

additional, certain immediate and possibly irreparable damage, injury and harm.  Furthermore, Defendants should be restrained and enjoined because GSI and Taylor are without a plain, adequate and complete remedy at law for the damage, injury and harm still to be sustained by it because of the difficulty and possible impossibility of accurately calculating those future damages and injuries because monetary damages do not satisfy all losses sustained by Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in such an amount of compensatory damages and/or actual or special damages as the jury or court deems reasonable and may award, plus interest and costs.

**COUNT II**
**APPROPRIATION OF CORPORATE OPPORTUNITIES**

84. Plaintiffs reallege and reaffirm all allegations and averments contained in all of the above and foregoing paragraphs of this Complaint.

85. Brucker, Mangini, and Jackson in conspiracy with and aided and abetted by the other Defendants ANGS, Copper River, and SOTEC, knowingly, intentionally, recklessly, negligently, wrongfully, fraudulently and/or maliciously, appropriated corporate business opportunities as defined and recognized by Georgia law, belonging to GSI and Taylor.

86. Such conduct resulted in certain, immediate, and possibly irreparable damage, injury and harm to GSI and Taylor, for all of which Defendants are liable, jointly and severally, to Plaintiffs.

87. As a direct and proximate result of Defendants' conduct, GSI and Taylor have been damaged and injured in a total amount that has not yet been determined.  However, GSI and Taylor estimate that Defendants' conduct in assigning the AT&T Services Contract to SOTEC has cost Plaintiffs in excess of $40,000,000.

88. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered

and continue to presently suffer and sustain certain immediate and possibly irreparable damage, injury and harm.  Unless Defendants are restrained and enjoined, GSI will continue to suffer additional, certain immediate and possibly irreparable damage, injury and harm.  Furthermore, Defendants should be restrained and enjoined because GSI and Taylor are without a plain, adequate and complete remedy at law for the damage, injury and harm still to be sustained by it because of the difficulty and possible impossibility of accurately calculating those future damages and injuries because monetary damages do not satisfy all losses sustained by Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in such an amount of compensatory and punitive damages as the jury deems reasonable and may award, plus interest and costs.

## COUNT III
## FRAUD, CONSTRUCTIVE FRAUD

89.    Plaintiffs reallege and reaffirm all allegations and averments contained in all of the above and foregoing paragraphs of this Complaint.

90.    Defendant Copper River's, SOTEC's, Brucker's, Mangini's, and Jackson's conduct has been fraudulent and/or constructively fraudulent, such conduct resulting in certain and immediate damage, injury and harm to Plaintiffs, for all of which Defendants are liable, jointly and severally to Plaintiffs.

91.    As a direct and proximate result of Defendants' conduct, GSI and Taylor have been damaged and injured in a total amount that has not yet been determined.  However, GSI and Taylor estimate that Defendants' conduct in assigning the AT&T Services Contract to SOTEC has cost Plaintiffs in excess of $40,000,000.

92.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to presently suffer and sustain certain immediate and possibly irreparable damage,

injury and harm.  Unless Defendants are restrained and enjoined, GSI will continue to suffer additional, certain immediate and possibly irreparable damage, injury and harm.  Furthermore, Defendants should be restrained and enjoined because GSI and Taylor are without a plain, adequate and complete remedy at law for the damage, injury and harm still to be sustained by it because of the difficulty and possible impossibility of accurately calculating those future damages and injuries because monetary damages do not satisfy all losses sustained by Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in such an amount of compensatory and punitive damages as the jury deems reasonable and may award, plus interest and costs.

## COUNT IV
## FRAUDULENT MISREPRESENTATION and/or FRAUDULENT INDUCEMENT

93.     Plaintiffs reallege and reaffirm all allegations and averments contained in all of the above and foregoing paragraphs of this Complaint.

94.     In or about January 2013, ANGS and Copper River, by and through Jack Hopkins, Giani and Brucker, represented to Taylor and GSI that Copper River would loan GSI $1.5 million so that GSI could continue to meet payroll, continue operating, have working capital and purchase equipment necessary for GSI to meet its obligations under the AT&T Services Contract.  Further, at this same time, ANGS and Copper River represented to Taylor and GSI, that GSI could pay back the $1.5 million loan from Copper River once ANGS provided GSI the $3 million consideration under the stock purchase agreement.

95.     Based on the foregoing representations by ANGS and Copper River, in or about January 2013, GSI and Taylor were induced into borrowing $1.5 million from Copper River.

96.     Plaintiffs reasonably relied on the representations of Defendants ANGS and Copper River.

97.     The representations made by Defendants were false and Defendants knew that these representations were false at the time they were made.

98.     As a proximate consequence of the Defendants' fraudulent misrepresentations, Plaintiff was injured and damaged as follows: Plaintiffs have lost the value and use of their money; they have incurred debt and interest on said debt, the lost the future capital investment promised; Plaintiff Taylor has suffered mental anguish and emotional distress and will continue to do so; and Plaintiffs have been otherwise injured and damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in such an amount of compensatory and punitive damages as the jury deems reasonable and may award, plus interest and costs.

## COUNT V
## FRAUDULENT SUPPRESSION and/or FRAUDULENT CONCEALMENT

99.     Plaintiffs reallege and reaffirm all allegations and averments contained in all of the above and foregoing paragraphs of this Complaint.

100.     Defendants Copper River, Brucker, and Mangini, had a duty to disclose to GSI and Taylor that said Defendants unlawfully assigned the AT&T Services Contract to SOTEC.

101.     Copper River, Brucker, and Mangini, actively suppressed and concealed from GSI and Taylor that said Defendants unlawfully assigned the AT&T Services Contract to SOTEC.

102.     Defendants possessed superior knowledge and expertise in financial and insurance matters and represented such to Plaintiffs.

103.     Defendants knowingly suppressed and/or concealed material information from the Plaintiffs.

104.     Defendants had a strict duty to disclose all the material facts with regards to the reassignment of the AT&T Services Contract to the Plaintiffs.

105.     Nonetheless, Defendants deliberately failed to disclose such material facts.

106.     As a proximate consequence of the Defendants' fraudulent suppression and/or concealment, Plaintiff was injured and damaged in excess of $40,000.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in such an amount of compensatory and punitive damages as the jury deems reasonable and may award, plus interest and costs.

### COUNT VI
### FRAUDULENT MISREPRESENTATION and INDUCEMENT

107.     Plaintiffs reallege and reaffirm all allegations and averments contained in all of the above and foregoing paragraphs of this Complaint.

108.     In or about April 2013, after receiving the $3 million loan and the B.I.A. guarantee of said loan, ANGS, Copper River, and Brucker represented to Taylor and GSI that ANGS would use the $3 million to purchase 268 shares of GSI stock at the purchase price of $11,194.03 per share if, in addition to receiving twenty percent ownership interest in GSI, selection of two individuals to serve on GSI's board, and GSI hiring Copper River as subcontractor for the AT&T Services Contract, GSI also agreed to hire Brucker as the President of GSI and Ed Mangini (the CFO of Copper River) as the CFO of GSI.

109.     Specifically, in or about April 2013, ANGS, Copper River, and Brucker told Taylor and GSI that Brucker had the expertise, knowledge, leadership, and experience to serve as both the president and CEO of both GSI and Copper River.

110.     Likewise, in or about April 2013 ANGS, Copper River, and Mangini represented to Taylor and GSI, in Atlanta, Georgia, that Mangini had the expertise, knowledge, leadership, and experience to serve as both the president and CFO of both GSI and Copper River.

111.     Further, ANGS, Copper River, Brucker and Mangini represented to Taylor and

GSI that hiring Brucker and Mangini would benefit GSI in that doing so would free Taylor up to manage the day-to-day operations of GSI's AT&T Services Contract while Brucker and Mangini used their respective expertise, knowledge, leadership and experience to properly manage the business operations of GSI.

112.     Based on ANGS, Copper River, Brucker and Mangini's representations, Taylor and GSI relied upon said representations and hired Brucker and Mangini as the president/CEO and CFO, respectively, of GSI.

113.     Taylor and GSI reasonably relied on Defendants' representations.

114.     The representations made by Defendants were false and Defendants knew that these representations were false at the time they were made.

115.     As a proximate consequence of the Defendants' fraudulent misrepresentations, Plaintiff was injured and damaged as follows: Plaintiffs have lost the value and use of their money; Plaintiffs have lost corporate business opportunities; Plaintiffs have suffered damage to their business reputations; Plaintiffs have suffered lost profits; Plaintiffs have paid salaries and benefits that they would not have paid; Plaintiffs have incurred debt and interest on said debt, the lost the future capital investment promised; Plaintiff Taylor has suffered mental anguish and emotional distress and will continue to do so; and Plaintiffs have been otherwise injured and damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in such an amount of compensatory and punitive damages as the jury deems reasonable and may award, plus interest and costs.

## COUNT VII
## FRAUDULENT SUPPRESSION and/or FRAUDULENT CONCEALMENT

116.     Plaintiffs reallege and reaffirm all allegations and averments contained in all of the above and foregoing paragraphs of this Complaint.

117.     Defendants ANGS, Copper River, Brucker and Mangini had a duty to disclose to GSI and Taylor that (i) that Brucker did not have the expertise, knowledge, leadership, and experience to serve as both the president and CEO of both GSI and Copper River; (ii) that  Mangini did not have the expertise, knowledge, leadership, and experience to serve as both the president and CFO of both GSI and Copper River; (iii) that hiring Brucker and Mangini would not benefit GSI; and that (iv) Brucker and Mangini would use their influence and roles as employees of GSI to help facilitate the appropriation of corporate business opportunities as defined and recognized by Georgia law, belonging to GSI and Taylor.

118.     Defendants ANGS, Copper River, Brucker and Mangini actively suppressed and concealed from GSI and Taylor that neither Brucker nor Mangini possessed the requisite expertise, knowledge, leadership, and experience for the respective positions, that neither Brucker nor Mangini would benefit GSI and that Brucker and Mangini would use their influence and roles as employees of GSI to help facilitate the appropriation of GSI's corporate business opportunities.

119.     Defendants possessed superior knowledge and expertise in financial and insurance matters and represented such to Plaintiff.

120.     Defendants knowingly suppressed and/or concealed material information from the Plaintiff.

121.     Defendants had a strict duty to disclose all the material facts mentioned above to the Plaintiff.

122.     Defendants deliberately failed to disclose the material facts above, when they had an absolute duty to disclose such facts to the Plaintiffs.

123.     As a proximate consequence of the Defendants' fraudulent conduct suppression and/or concealment, Plaintiff was injured and damaged as alleged in paragraph 101 above.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in such an amount of compensatory and punitive damages as the jury deems reasonable and may award, plus interest and costs.

## COUNT VIII
## CONVERSION

124.     Plaintiffs reallege and reaffirm all allegations and averments contained in all of the above and foregoing paragraphs of this Complaint.

125.     On or about July 2, 2014, and subsequent thereto, Defendants Copper River and Mangini converted for their own use, unlawfully and without knowledge and consent of the Plaintiffs, sums of money belonging to Plaintiffs.

126.     As a proximate result of such conversion, Plaintiffs were injured and damaged as follows: they have suffered financially from the actions of the Defendants; they have lost the use and value of their money, as well as the interest on said funds; they have suffered mental anguish and emotional distress and will continue to do so; and they have otherwise been injured and damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in such an amount of compensatory and punitive damages as the jury deems reasonable and may award, plus interest and costs.

## COUNT IX
## CIVIL CONSPIRACY

127.     Plaintiffs reallege and reaffirm all allegations and averments contained in all of the above and foregoing paragraphs of this Complaint.

128.     Defendants actively and deliberately conspired with one another to engage in and accomplish the acts described herein that proximately resulted in damages to the Plaintiffs, as

alleged in Counts II-VIII above.

129.     The conspiracy by the Defendants included, but was not limited to, the conspiracy to commit acts of fraud, suppression, concealment, conversion and appropriation of corporate opportunities as described herein.

130.     As a proximate result of Defendants' conduct, Plaintiffs were injured and damaged as alleged in Paragraphs 84, 101, and 112 above.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in such an amount of compensatory and punitive damages as the jury deems reasonable and may award, plus interest and costs.

## COUNT X
## CONSTRUCTIVE TRUST

131.     Plaintiffs reallege and reaffirm all allegations and averments contained in all of the above and foregoing paragraphs of this Complaint.

132.     By virtue of the above allegations, Defendants are in possession of property and property rights that should be dismissed to be held by them in constructive trust for the benefit of Plaintiffs and Plaintiffs are thereby entitled to the imposition of a constructive trust upon all such property and property rights.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in such an amount of compensatory damages, actual and/or special damages, and equitable relief as the jury or court deems reasonable and may award, plus interest and costs.

## COUNT XI
## GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT

133.     Plaintiffs reallege and reaffirm all allegations and averments contained in all of the above and foregoing paragraphs of this Complaint.

134.    Defendants Copper River's, SOTEC's, Brucker's, Mangini's, and Jackson's conduct, as specified in paragraphs 52 to 63 above, constitutes a direct violation of the Deceptive Trade Practices Act, O.C.G.A. § 10-1-371 *et.seq.*

135.    Specifically, the Defendants' conduct consists of: passing off services as those of another in violation of O.C.G.A. § 10-1-372(a)(1), causing the likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of services in violation of O.C.G.A. § 10-1-372(a)(2), causing the likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another in violation of O.C.G.A. § 10-1-372(a)(3), and using deceptive representations in connection with goods or services in violation of O.C.G.A. § 10-1-372(a)(4).

136.    Further, the Defendants' actions constitute engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding in violation of O.C.G.A. § 10-1-372(a)(12).

137.    By virtue of the above allegations, Plaintiffs seek a temporary and permanent injunction against Defendants as well as all other damages authorized by law in an amount to be proven at trial.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in such an amount of compensatory damages, actual and/or special damages, and equitable relief as the jury or court deems reasonable and may award, plus interest and costs.

## COUNT XII
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

138.    Plaintiffs realleged and reaffirm all allegations and averments contained in all of the above and foregoing paragraphs of this Complaint.

139.    Defendants Copper River, SOTEC, Brucker, Mangini, and Jackson acted

improperly and without authority when they convinced AT&T to assign GSI's AT&T Services Contract to SOTEC, and to pay SOTEC under the contract, rather than GSI.

140.    As a result of Defendants' actions, AT&T discontinued its business relationship with GSI and Plaintiff Taylor.

141.    Defendants' actions were purposeful and malicious, and their intention was for GSI to stop receiving the benefits of the AT&T Services Contract.

142.    As a proximate consequence of the Defendants' fraudulent misrepresentations, Plaintiff was injured and damaged as follows: Plaintiffs have lost the value and use of their money; Plaintiffs have lost corporate business opportunities; Plaintiffs have suffered damage to their business reputations; Plaintiffs have suffered lost profits; Plaintiffs have paid salaries and benefits that they would not have paid; Plaintiffs have incurred debt and interest on said debt, the lost the future capital investment promised; Plaintiff Taylor has suffered mental anguish and emotional distress and will continue to do so; and Plaintiffs have been otherwise injured and damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in such an amount of compensatory and punitive damages as the jury deems reasonable and may award, plus interest and costs.

## COUNT XIII
## TORTIOUS INTERFERENCE WITH CONTRACT

143.    Plaintiffs realleged and reaffirm all allegations and averments contained in all of the above and foregoing paragraphs of this Complaint.

144.    Defendants Copper River, SOTEC, Brucker, Mangini, and Jackson acted improperly and without authority when they convinced AT&T to assign GSI's AT&T Services Contract to SOTEC, and to pay SOTEC under the contract, rather than GSI.

145.    As a result of Defendants' actions, AT&T discontinued its business relationship

with GSI and Plaintiff Taylor.

146.    Defendants' actions were purposeful and malicious, and their intention was for AT&T to discontinue its contractual relationship with GSI, and for GSI to stop receiving the benefits of the AT&T Services Contract.

147.    As a proximate consequence of the Defendants' fraudulent misrepresentations, Plaintiff was injured and damaged as follows: Plaintiffs have lost the value and use of their money; Plaintiffs have lost corporate business opportunities; Plaintiffs have suffered damage to their business reputations; Plaintiffs have suffered lost profits; Plaintiffs have paid salaries and benefits that they would not have paid; Plaintiffs have incurred debt and interest on said debt, the lost the future capital investment promised; Plaintiff Taylor has suffered mental anguish and emotional distress and will continue to do so; and Plaintiffs have been otherwise injured and damaged.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in such an amount of compensatory and punitive damages as the jury deems reasonable and may award, plus interest and costs.

## COUNT XIV
## UNJUST ENRICHMENT

148.    Plaintiffs reallege and reaffirm all allegations and averments contained in all of the above and foregoing paragraphs of this Complaint.

149.    Defendants are in possession of property and property rights which, in equity and good conscience they should not be entitled to retain.

150.    By virtue of the above allegations, Plaintiffs are entitled to obtain Judgment and to recover Defendants such damages as are shown by the evidence at trial.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in such an amount of compensatory damages, actual and/or special damages, and equitable relief as the jury or court deems reasonable and may award, plus interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the entry of Judgment against Defendants, Jointly and Severally, as follows:

a) In such amounts as are shown by the evidence at trial for actual and compensatory damages;

b) For reasonable attorney's fees and expenses of litigation;

c) For punitive damages in such amounts as are determined by impartial jurors;

d) For a constructive trust; and

e) For such other and further relief as this Court deems just and equitable under the law.

## JURY DEMAND

PLAINTIFFS HEREBY DEMAND TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

Respectfully submitted this 17th day of July, 2017,


*/s/ Jon D. Pels*_____
Jon D. Pels, Esq.  (VSB # 39888)
*Attorney for Plaintiff*

OF COUNSEL:
**The Pels Law Firm**
8500 Leesburg Pike, Suite 400
Vienna, Virginia 22010
T: (703) 684-1897
F: (703) 684-1898
Email: jpels@pallaw.com

/s/ *Larry A. Golston, Jr.*
Larry A. Golston, Jr.
Rachel N. Boyd
(*admitted Pro Hac Vice*)
*Attorneys for Plaintiff*

OF COUNSEL:

**BEASLEY ALLEN CROW**
**METHVIN PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, AL 36103
T: (334) 269-2343
F: (334) 954-7555
E-mail: larry.golston@beasleyallen.com
          rachel.boyd@beasleyallen.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 17th day of July, 2017, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following filing user(s):

W. Michael Holm
Laurin H. Mills
**LECLAIRRYAN, a Professional Corporation**
2318 Mill Rd., Suite 1100
Alexandria, VA 22314
*Attorneys for Defendants*

Robert P. Fletcher
**LECLAIRRYAN, A Professional Corporation**
815 Connecticut Avenue, N.W.
Suite 620
Washington, D.C. 200006
T: (202) 659-4140
F: (202) 659-4130
Email:  robert.fletcher@leclairryan.com
*(admitted Pro Hac Vice)*
*Attorney for Defendants*

Kevin M. McLaughlin
**Copper River Shared Sources, LLC**
4501 Singer Court, Suite 300
Chantilly, Virginia 20151
T: (703) 234-2011
Email:  kevin.mclaughlin@copperriverss.com
*(admitted Pro Hac Vice)*
*Attorney for Defendants*

*/s/ Jon D. Pels*
OF COUNSEL